DAVID SHORTT *v.* NEW MILFORD POLICE DEPARTMENT (13524)

PETERS, C. J., CALLAHAN, GLASS, COVELLO and HULL, Js.

---

Argued June 9—decision released July 25, 1989

*Jeffrey B. Sienkiewicz,* with whom was *Nancy R. Sienkiewicz,* for the appellant (defendant).

*Janet Bond Arterton,* with whom was *JoNel Newman,* for the appellee (plaintiff).

PETERS, C. J. This appeal involves two questions of construction concerning the scope of General Statutes § 31-72[1]: (1) whether a municipality constituted an

---

[1] General Statutes § 31-72 provides: "CIVIL ACTION TO COLLECT WAGE CLAIM OR ARBITRATION AWARD. When any employer fails to pay an employee wages in accordance with the provisions of sections 31-71a to 31-71i, inclusive, or where an employee or a labor organization representing an employee institutes an action to enforce an arbitration award which requires an employer to make an employee whole or to make payments to an employee welfare fund, such employee or labor organization may recover, in a civil action, twice the full amount of such wages, with costs and such reason-

"employer" for the purposes of this statute under the definition contained in General Statutes § 31-71a (1) prior to its amendment by Public Acts 1987, No. 87-366, § 2;[2] and (2) whether this statute provides an independent substantive cause of action for the collection of wages that permits the bypass of otherwise applicable grievance procedures under a collective bargaining agreement. The trial court dismissed, for lack of subject matter jurisdiction, the action brought by the plaintiff, David Shortt, to collect wages allegedly owed to him by the defendants, the New Milford police department and the town of New Milford. The Appellate Court, finding error, sustained the plaintiff's appeal and remanded the case for further proceedings. *Shortt* v. *New Milford Police Department,* 16 Conn. App. 232, 547 A.2d 107 (1988). We granted the petition for certification filed by the defendant New Milford police department. *Shortt* v. *New Milford Police Department,* 209 Conn. 817, 550 A.2d 1085 (1988).[3] Because we dis-

able attorney's fees as may be allowed by the court, and any agreement between him and his employer for payment of wages other than as specified in said sections shall be no defense to such action. At the request of any worker who has failed to receive payment under the provisions of said sections, the labor commissioner may take an assignment of such wage claim in trust for the assigning employee and may bring any legal action necessary to recover the amount provided by this section, and the employer shall be required to pay the costs and such reasonable attorney's fees as may be allowed by the court."

[2] Public Acts 1987, No. 87-366, § 2, amended the definition of "employer" in General Statutes § 31-71a (1) to include "the state and any political subdivision thereof."

Prior to its amendment, General Statutes (Rev. to 1985) § 31-71a provided in relevant part: "(1) 'Employer' includes any individual, partnership, association, joint stock company, trust, corporation, the administrator or executor of the estate of a deceased person, the conservator of the estate of an incompetent, or the receiver, trustee, successor or assignee of any of the same, employing any person;

"(2) 'Employee' includes any person suffered or permitted to work by an employer . . . ."

[3] Our order of certification limited the defendant's appeal to the following two issues: "(1) Did the Appellate Court err in concluding that the plain-

agree with the Appellate Court's resolution of the two issues that we certified, we now reverse.

The Appellate Court's opinion reveals the following factual and procedural history derived from the allegations in the plaintiff's complaint. The defendant New Milford police department hired the plaintiff, David Shortt, as a police officer. After completing his training, the plaintiff began working as a probationary patrol officer on July 23, 1984. *Shortt* v. *New Milford Police Department,* supra, 16 Conn. App. 233. One month later, a required medical examination revealed that he had certain " 'extra heartbeats.' " Id. During a subsequent period of tests to determine the extent and the seriousness of his heart condition, the plaintiff continued to be employed as a police officer and received his salary. Id., 233–34. On October 12, 1984, he was hospitalized for three days of further testing, for which he received sick pay. Id., 234.

From October 15, 1984, to April 17, 1985, although the plaintiff nominally returned to work, he was not permitted to resume full active duties. He was allowed to carry his police badge but received no wages. He was not returned to active status until he executed a workers' compensation waiver of liability for his preexisting heart condition. Id.

As a member of the International Brotherhood of Police Officers, Local 361 (union), the plaintiff was subject to its collective bargaining agreement with the defendant, pursuant to the provisions of General Stat-

---

tiff police officer had an independent statutory right for collection of unpaid wages, costs and attorney's fees under § 31-72 of the Connecticut General Statutes when neither his entitlement to wages nor the amount thereof had been determined under the grievance procedure contained in the collective bargaining agreement? (2) Did the Appellate Court err in holding that § 31-72 of the Connecticut General Statutes was applicable to the defendant as an 'employer' within the statutory definition of that term contained in General Statutes § 31-71a (1)?''

utes §§ 7-467 through 7-477. Id. The collective bargaining agreement provided a three step process for the resolution of grievances and disputes arising out of the course of the employment relationship. On November 15, 1984, the plaintiff filed a claim for nonpayment of wages, in compliance with step one of the mandated grievance procedures. The defendant denied the claim because it considered him to be on " 'indefinite sick leave without pay.' " Id. When settlement discussions failed, the plaintiff abandoned further grievance proceedings and instead, just prior to the lapse of the two year statute of limitations,[4] commenced suit under § 31-72 to collect wages allegedly due him for the period commencing with his hospital discharge and ending with his execution of the workers' compensation waiver. Id., 234–35.

In the trial court, the defendants moved to dismiss the plaintiff's action on the basis that the court lacked jurisdiction over the subject matter of the dispute. Id., 235. They alleged, in a supporting affidavit, that the plaintiff had failed to pursue the further steps contained in the administrative grievance process set forth in article XXIII of the collective bargaining agreement between the town and the police union.[5] Id., 235–36.

---

[4] General Statutes § 52-596 provides: "ACTIONS FOR PAYMENT OF REMUNERATION FOR EMPLOYMENT. No action for the payment of remuneration for employment payable periodically shall be brought but within two years after the right of action accrues, except that this limitation shall be tolled upon the filing with the labor commissioner of a complaint for failure to pay wages pursuant to the provisions of chapter 558."

[5] Article XXIII of the collective bargaining agreement provides:
"Grievance Procedure and Arbitration
"Grievances arising out of matters covered by this Agreement or conditions of work or applicable law arising out of employee-employer relations will be processed in the following manner:
"Step 1.
"An employee or the IBPO having a grievance or complaint, shall take such grievance or complaint to the Chief of Police in writing or, in his

In its memorandum of decision granting the defendants' motion to dismiss, the trial court concluded that the terms of the collective bargaining agreement mandated exhaustion of the three step grievance process before the plaintiff might invoke applicable law, in this instance § 31-72. For this reason, the court concluded that it lacked subject matter jurisdiction to proceed. Id., 236.

The Appellate Court, while recognizing the general rule that available administrative remedies must ordinarily be exhausted, declined to apply this rule to a statutory action for the collection of wages. Expressing the view that the collection of wages is not an appropriate subject for collective bargaining, the court ruled that the plaintiff's rights under § 31-72 were not preempted by the collective bargaining agreements. Id., 236–38. The Appellate Court apparently assumed, without discussion, that municipalities were employers liable for defaulted wage payments under the terms of § 31-72.[6]

absence, the officer in charge. The Chief of Police or the officer in charge, in his absence, shall answer the grievance within five (5) working days from receipt of the grievance in writing.

"Step 2.

"If the grievant or the Union are not satisfied with the decision rendered by the Chief of Police, such grievance shall be submitted in writing not less than seven (7) days prior to the next regularly scheduled meeting date of the Commission. The Board of Police Commissioners shall consider the matter at the next monthly meeting or a special meeting and render its decision in writing within seven (7) days after its meeting.

"Step 3.

"If the grievant or the Union are not satisfied with the decision rendered by the Board of Police Commissioners, he may, within fifteen (15) days, submit the matter to the State Board of Mediation and Arbitration for arbitration. The decision of the Arbitration Panel shall be final and binding on both parties. Said Board shall not have the authority to change, modify, or otherwise amend this Agreement."

[6] The plaintiff claims in his brief that the defendant did not raise the issue of whether the New Milford police department was an "employer" under General Statutes § 31-72 at the Appellate Court, and that this issue is there-

Pursuing the two issues on which we granted certification, the defendant police department maintains that the Appellate Court erred in construing § 31-72 to permit the plaintiff to recover alleged unpaid wages from the defendant. First, the defendant argues that it was exempt from § 31-72 because municipal employers were not covered by that statute at the time when this lawsuit was commenced. Second, the defendant argues that the plaintiff was not entitled to invoke § 31-72 without having first exhausted the grievance process contained in the collective bargaining agreement that his union had negotiated. We agree with both of these claims of error.

## I

We turn first to the issue of the applicability of § 31-72 to municipal employers prior to the 1987 amendment of § 31-71a (1). The unamended definition of "employer" in § 31-71a (1) expressly included "any . . . corporation."[7] The amendment added "the state and any political subdivision thereof" to the categories of those encompassed by the term "employer." Public Acts 1987, No. 87-366, § 2. The dispositive question posed by this legislative history is whether the legislature intended by its 1987 amendment to clarify or to enlarge the definition of "employer" in § 31-71a (1).

As a point of departure, we note that the relationship between "corporation" and "municipal corporation" is not obvious on the face of the language of § 31-71a (1) as it existed before 1987. Our task, in

fore not properly before us. At oral argument in this court, however, the plaintiff took no exception to the defendant's representation that the municipality-employer question occupied one half of the oral argument before the Appellate Court. Therefore, the certified issue of whether a municipality constitutes an "employer" for purposes of § 31-72 as defined by General Statutes § 31-71a prior to its amendment by Public Acts 1987, No. 87-366, is properly before this court.

[7] For the relevant text of General Statutes § 31-71a, see footnote 2, supra.

resolving this ambiguity, is to construe § 31-72 so as to " ' "ascertain and give effect to the apparent intent of the legislature." ' " *Capalbo* v. *Planning & Zoning Board of Appeals,* 208 Conn. 480, 486, 547 A.2d 528 (1988); *State* v. *Champagne,* 206 Conn. 421, 428, 538 A.2d 193 (1988); *State* v. *Blasko,* 202 Conn. 541, 553, 522 A.2d 753 (1987). In ascertaining that intent, we deem the legislature to have intended to harmonize its enactment with existing common law and statutory requirements. *Commissioner* v. *Freedom of Information Commission,* 204 Conn. 609, 621, 529 A.2d 692 (1987); *Dart & Bogue Co.* v. *Slosberg,* 202 Conn. 566, 575, 522 A.2d 763 (1987). Accordingly, the legislature must have understood that, although a municipality is a corporation for some purposes, such as its right to sue and be sued, its exercise of distinctive governmental functions has afforded it extensive immunity from civil liability. See, e.g., *Roman* v. *Stamford,* 211 Conn. 396, 397–98, 559 A.2d 710 (1989); *Gordon* v. *Bridgeport Housing Authority,* 208 Conn. 161, 165–70, 544 A.2d 1185 (1988). In this context, we would be reluctant to assume that the legislature intended to impose additional liability on municipal corporations without expressly saying so.

This conclusion finds further support in the provisions of the Municipal Employee Relations Act (MERA), General Statutes § 7-467 et seq. Extending the rights and obligations of collective bargaining to employees of local government, MERA "was designed to accomplish the salutary purpose of promoting harmony between local governments and their employees. . . . To effectuate these principles of collective bargaining, the MERA makes it mandatory for local governmental employers and their employees 'to meet at reasonable times . . . and confer in good faith with respect to *wages,* hours and other conditions of employment . . . . ' General Statutes § 7-470 (c)." (Emphasis added.) *New Haven*

v. *State Board of Labor Relations,* 36 Conn. Sup. 18, 24, 410 A.2d 140 (1979). Since the legislature is presumed to exercise its statutory authority with knowledge of existing relevant statutes and with the intention of creating one consistent body of law; *Commissioner* v. *Freedom of Information Commission,* supra, 621; *Beloff* v. *Progressive Casualty Ins. Co.,* 203 Conn. 45, 57, 523 A.2d 477 (1987); it is reasonable to infer that the legislature would not have intended sub silentio to displace such a comprehensive regulatory scheme. In this regard, it is particularly noteworthy that General Statutes § 7-470 provides a comprehensive list of prohibited acts by employers and employee organizations. The existence of MERA, therefore, buttresses our conclusion that the term "employer" in § 31-72 before its amendment did not include municipal corporations.

In this context, the inferences to be drawn from the 1987 amendment to § 31-72 are readily ascertainable. We presume that, when the legislature amends the language of a statute, it intends to change the statute's meaning; *Shelton* v. *Commissioner,* 193 Conn. 506, 513, 479 A.2d 208 (1984); and to accomplish some new purpose. *Farricielli* v. *Personnel Appeal Board,* 186 Conn. 198, 204, 440 A.2d 286 (1982). Although this presumption is not irrebuttable, there must be contrary evidence, either in the language of the amendment or in its legislative history, to establish that the legislature intended instead to clarify the existing meaning of the prior statute. *Shelton* v. *Commissioner,* supra, 513–14; *Tax Commissioner* v. *Estate of Bissell,* 173 Conn. 232, 246, 377 A.2d 305 (1977).

We are not persuaded by the plaintiff's contention that the legislative history of Public Acts 1987, No. 87-366, § 2, bears evidence of a legislative intent to clarify rather than to change the scope of the definition of "employer" applicable to § 31-72. The plaintiff points to an ambiguous reference by the amendment's legis-

lative sponsor to an attorney general's opinion that neither we nor the parties have succeeded in locating, to the effect that municipalities were already bound by § 31-72. Other parts of the legislative history support a contrary construction.[8] On this state of the legislative record, the plaintiff has not succeeded in overcoming the presumption that statutory amendments are intended to modify existing law. *Vartuli* v. *Sotire,* 192 Conn. 353, 364 n.12, 472 A.2d 336 (1984); *Heffernan* v. *Slapin,* 182 Conn. 40, 49, 438 A.2d 1 (1980). We conclude, therefore, that the scope of General Statutes (Rev. to 1985) § 31-72 did not extend to municipal employers, such as the defendant police department in the present case.

---

[8] The plaintiff focuses on two separate remarks by Representative Joseph A. Adamo, the amendment's sponsor: "The amendment is quite simple. In the statutes regarding wage execution and wage enforcement, it was found that the description or definition of employer was different and that the attorney general at one time had in fact done a ruling that stated that the municipal employees were in fact subject to the enforcement, wage enforcement laws. This amendment clearly defines that the state and the municipalities would be subject to wage enforcing statutes"; 30 H.R. Proc., Pt. 20, 1987 Sess., p. 7318; and "I have to make it clear here that what we had in front of us before was [General Statutes §] 31-71 with an attorney general's ruling that said municipalities were in fact, covered under the law . . . . If we're going to mandate on every business out there and on the municipalities that they have to live with the wage enforcement laws, it seems only right that the State of Connecticut also, as well." Id., p. 7345.

The defendant cites an inquiry made by Representative Robert G. Jaekle: "I'm curious about the effect of the amendment which is now Sec. 2 of the file before us. And I notice that the amendment changes the definition of employer to include the State of Connecticut and political subdivisions of the state for the purpose of [General Statutes §] 31-71a through [31-71i]." Id., p. 7339. The legislative record indicates no attempt by Representative Adamo to disabuse Representative Jaekle of his articulated understanding. The missing ingredient in attempting to resolve this seeming inconsistency would appear to be the referenced attorney general opinion. Plaintiff's counsel was kind enough to forward, after our inquiry at oral argument, those attorney general opinions to which the legislative history may have made reference. Unfortunately, these opinions do not illuminate the ambiguity in the legislative history before us.

## II

The defendant's second claim challenges the Appellate Court's conclusion that the plaintiff could pursue an action under § 31-72 without first establishing his entitlement to uncollected wages through recourse to available grievance procedures. Although this is a claim of error that we need not address, given our resolution of the definition of "employer," we deem it prudent to determine the scope of § 31-72 in light of the legislature's amendment of the statute to include municipal employers. We conclude that the plaintiff was afforded a meaningful administrative remedy by the grievance process, that this remedy was an appropriate resource antecedent to his statutory right under § 31-72, and that his failure to exhaust this administrative remedy deprived the trial court of subject matter jurisdiction.

The issue posed by the defendant's second claim of error can be restated as follows. How should we reconcile the provisions of § 31-72, which provide an employee with a statutory right to collect unpaid wages, with the provisions of a collective bargaining agreement, negotiated by his union, which requires arbitration of "[g]rievances arising out of matters covered by . . . *applicable law* arising out of employee-employer relations?"[9] (Emphasis added.) In order to resolve this issue, we must determine what purpose the legislature intended § 31-72 to serve. If the statute creates a substantive right independent of existing labor relations statutes, then it would follow, as the Appellate Court held, that the plaintiff would be free to pursue this independent right without reference to collective bargaining procedures for grievance proceedings and arbitration. If, however, the statute provides only an

_____

[9] See article XXIII of the collective bargaining agreement, footnote 5, supra.

additional remedy for wages otherwise determined to be due and owing, then the trial court would be correct in its determination of the jurisdictional issue.

We begin our examination of the scope of § 31-72 by recourse to the accepted rules of statutory construction. We look first to the text of § 31-72 itself, which provides, in relevant part, that an employee may bring a civil action "[w]hen any employer fails to pay an employee wages . . . or where an employee or a labor organization representing an employee institutes an action to enforce an arbitration award which requires an employer to make an employee whole . . . ." On its face, the statute's inclusion of a remedy for enforcement of an arbitration award demonstrates that the legislature understood the collection of wages to be a proper subject for arbitration under a collective bargaining agreement. Since the wording of a statute is presumed to express the intent of the legislature; *Ganim* v. *Roberts,* 204 Conn. 760, 763, 529 A.2d 194 (1987); *Orticelli* v. *Powers,* 197 Conn. 9, 13, 495 A.2d 1023 (1985); and since a statute is to be considered as a whole, with a view toward reconciling its separate parts in order to render an overall reasonable interpretation; *American Universal Ins. Co.* v. *DelGreco,* 205 Conn. 178, 193, 530 A.2d 171 (1987); *Peck* v. *Jacquemin,* 196 Conn. 53, 63, 491 A.2d 1043 (1985); this statutory linkage between wage claims and arbitration awards is informative. Certainly the language employed by the legislature gives no clear indication of an intent to create a substantive right to collect wages that is independent of the remedies stipulated by the grievance procedures under a collective bargaining agreement. If anything, the provision of a remedy to enforce an arbitral award relating to wages suggests that the legislature intended to preserve the normal principle

that available administrative remedies must be exhausted before judicial intervention is sought.[10]

This construction of § 31-72 is further buttressed when that statute is read in conjunction with the text of General Statutes § 31-71d, one of the related statutes that § 31-72 expressly incorporates by reference. Section 31-71d (a) provides that, "[i]n case of a dispute over the amount of wages, the employer shall pay . . . all wages, or parts thereof, conceded by him to be due . . . ." The limitation of liability for immediate payment of wages "conceded by him to be due" is inconsistent with the assertion that § 31-72 provides an independent substantive right to collect any and all wages to which an employee claims that he is entitled. In the present case, of course, the defendant has consistently denied that any unpaid wages are due the plaintiff.

The plaintiff urges us nonetheless to construe § 31-72 in light of federal precedents interpreting a number of federal statutes that confer rights on employees in addition to those that they can achieve through collective bargaining. The extent to which these federal cases illuminate § 31-72 is limited, however, by two caveats. First, in the construction of our own statute, we exercise plenary authority that is not preempted by federal

[10] "[T]he doctrine of exhaustion of remedies fosters an orderly process of administrative adjudication and judicial review, offering a reviewing court the benefit of the agency's findings and conclusions. It relieves courts of the burden of prematurely deciding questions that, entrusted to an agency, may receive a satisfactory administrative disposition and avoid the need for judicial review." *Owner-Operators Independent Drivers Assn. of America* v. *State,* 209 Conn. 679, 691–92, 553 A.2d 1104 (1989); *Connecticut Life & Health Ins. Guaranty Assn.* v. *Jackson,* 173 Conn. 352, 358–59, 377 A.2d 1099 (1977); cf. *Cianci* v. *Connecticut Council, AFSCME,* 8 Conn. App. 197, 512 A.2d 232 (1986) (once administrative remedy invoked, the existence of concurrent judicial jurisdiction does not obviate exhaustion of remedies doctrine); *Fortunato* v. *Board of Public Safety,* 36 Conn. Sup. 637, 640, 423 A.2d 909 (1980) (exhaustion of administrative remedies required prior to invoking applicable statutory remedy).

precedents. Second, in the search for persuasive analogies from federal law, we must ascertain how closely the subject matter of our statute mirrors that of the federal statutes at issue in the federal cases.

A number of United States Supreme Court cases have held that, when federal law confers a specific judicial remedy to employees for the denial of designated statutory rights, an employee may invoke a judicial forum to vindicate these rights without regard to the existence of grievance procedures under a collective bargaining agreement. In *Alexander* v. *Gardner-Denver Co.,* 415 U.S. 36, 94 S. Ct. 1011, 39 L. Ed. 2d 147 (1974), the court permitted a trial de novo under Title VII of the Civil Rights Act of 1964, § 701 et seq. as amended, 42 U.S.C.A. § 2000e et seq., to enforce a claim of wrongful discharge due to racial discrimination, despite the prior unsuccessful submission of this claim to grievance proceedings pursuant to a collective bargaining agreement. In *Barrentine* v. *Arkansas-Best Freight System, Inc.,* 450 U.S. 728, 101 S. Ct. 1437, 67 L. Ed. 2d 641 (1981), the court held that pursuit of a statutory right to vindicate a minimum wage claim under the Fair Labor Standards Act; 29 U.S.C. § 201 et seq.; was not precluded by lack of success under the grievance procedures of a collective bargaining agreement. In *Lingle* v. *Norge Division of Magic Chef, Inc.,* 486 U.S. 399, 108 S. Ct. 1877, 100 L. Ed. 2d 410 (1988), the court held that a state tort remedy was not preempted by § 301 of the Labor Management Relations Act. 29 U.S.C. § 185. The court has reasoned, in these cases, that "[t]he distinctly separate nature of these contractual and statutory rights is not vitiated merely because both were violated as a result of the same factual occurrence. And certainly no inconsistency results from permitting both rights to be enforced in their respectively appropriate forums." *Alexander* v. *Gardner-Denver Co.,* supra, 50. "[A] contractual right to submit a claim

to arbitration is not displaced simply because Congress also has provided a statutory right against discrimination. Both rights have legally independent origins and are equally available to the aggrieved employee." Id., 52. Notably, however, the court has also held, in *Perry* v. *Thomas,* 482 U.S. 483, 107 S. Ct. 2520, 96 L. Ed. 2d 426 (1987), that, under the Supremacy Clause, the provision of the Federal Arbitration Act governing enforcement of arbitration agreements preempted a provision of the California Labor Code stating that wage collection actions may be maintained without regard to the existence of any private agreement to arbitrate.[11]

We are not persuaded that the federal cases that preserve an independent judicial remedy provide persuasive analogies for § 31-72. Despite the plaintiff's contention to the contrary, we see significant differences between the nature and purpose of the relevant federal statutes and that of § 31-72. The closest analogy by far is to the Fair Labor Standards Act. "The principal congressional purpose in enacting the Fair Labor Standards Act of 1938 was to protect all covered workers from substandard wages and oppressive working hours, 'labor conditions [that are] detrimental to the maintenance of minimum standards of living necessary for health, efficiency, and general well-being of workers.' 29 U.S.C. § 202 (a)." *Barrentine* v. *Arkansas-Best Freight System, Inc.,* supra, 739; see also id., 739 n.14. As such, the Fair Labor Standards Act guarantees covered employees specific substantive rights that attach to the individual and that the individual cannot

---

[11] Interestingly, the federally preempted provision of the California Labor Code; Cal. Lab. Code Ann. § 229 (West 1971); is remarkably similar in purpose to General Statutes § 31-72 with one notable exception. Unlike our statute, the California Labor Code expressly provides that such civil action for the collection of wages may be maintained without regard to the grievance procedures contracted to in a collective bargaining agreement. *Perry* v. *Thomas,* 482 U.S. 483, 484, 107 S. Ct. 2520, 96 L. Ed. 2d 426 (1987).

waive by contractual dispute-resolution procedures. Title VII of the Civil Rights Act similarly provides substantive rights, rooted in federal constitutional law, that transcend the normal scope of wage disputes.

Our statute, by contrast with these federal authorities, merely provides an enhanced remedy for the collection of wages.[12] It does not embody substantive standards to determine the amount of wages that are payable but provides penalties in order to deter employers from deferring wage payments once they have accrued.[13] Section 31-72 is, therefore, a remedial statute rather than one creating independent substantive rights.

In addition, the policy considerations to which the United States Supreme Court adverted in *Barrentine* v. *Arkansas-Best Freight System, Inc.,* supra, do not apply in this case. The United States Supreme Court was concerned that a right to minimum labor standards should not be subject to diminution by the inherent vagaries of the collective bargaining process, which allow a union, in good faith, not to pursue any one particular claim to arbitration.[14] Id., 742. No such third

---

[12] In a successful civil action under General Statutes § 31-72, a plaintiff may collect twice the full amount of wages due with costs and such attorney's fees as are allowed by the court.

[13] Although Senator Nancy L. Johnson said in committee hearings, held in 1978 to amend General Statutes § 31-72 to increase the penalties on employers, that "the payment of *earned wages* is a basic gut-level right that should be assured by clear, strong state statutes," (emphasis added) much of the emphasis of her remarks reveals that a primary purpose was to penalize the employers. "The penalty for non-payment of wages is set forth in Section 31-72. An unpaid employee must bring suit in court and if he or she wins, he or she recovers wages and credit [sic] costs. This is hardly a sufficient penalty for so serious an offense as non-payment of wages. In fact, the employer loses nothing but court costs, while the employee has to bring a suit and go without *earned wages* for months or years." (Emphasis added.) Conn. Joint Standing Committee Hearings, Labor, 1978 Sess., pp. 154–55.

[14] "Since a union's objective is to maximize overall compensation of its members, not to ensure that each employee receives the best compensa-

party abandonment of this plaintiff's wage claim can occur because this plaintiff, under his collective bargaining agreement, was guaranteed individual access to the contractual grievance process.[15] The United States Supreme Court's additional concern, that an arbitrator might lack the competence to guarantee adequate protection for an employee's statutory rights when the dispositive question was an issue of law rather than fact;[16] id., 743-44; does not arise when the issue is entitlement to wages per se. Whether an employee has earned the right to collect wages involves the kind of question of fact that is grist for the arbitration mill.[17]

In sum, we construe § 31-72 as a statute for collection of wages that coexists with contractual submission of wage disputes to grievance procedures specified in applicable collective bargaining agreements. Because the plaintiff in this case failed to exhaust his administrative remedies under such a collective bargaining agreement, the Appellate Court erred in reinstating his statutory claim for uncollected wages.

tion deal available, cf. *Alexander* v. *Gardner-Denver Co.*, [415 U.S. 36, 58 n.19, 94 S. Ct. 1011, 39 L. Ed. 2d 147 (1974)], a union balancing individual and collective interests might validly permit some employees' statutorily granted wage and hour benefits to be sacrificed if an alternative expenditure of resources would result in increased benefits for workers in the bargaining unit as a whole." *Barrentine* v. *Arkansas-Best Freight System, Inc.*, 450 U.S. 728, 742, 101 S. Ct. 1437, 67 L. Ed. 2d 641 (1981).

[15] See footnote 5, supra.

[16] "[T]he specialized competence of arbitrators pertains primarily to the law of the shop, not the law of the land." *Alexander* v. *Gardner-Denver Co.*, 415 U.S. 36, 57, 94 S. Ct. 1011, 39 L. Ed. 2d 147 (1974); *Barrentine* v. *Arkansas-Best Freight System, Inc.*, 450 U.S. 728, 743, 101 S. Ct. 1437, 67 L. Ed. 2d 641 (1981).

[17] In oral argument before this court, the defendant acknowledged that, if the plaintiff had pursued his grievance and prevailed therein with respect to his wage claim, he would then have been entitled to collect the enhanced remedy of double wages provided by General Statutes § 31-72 because the collective bargaining agreement provided for resolution of disputes arising out of applicable employment law.

The judgment of the Appellate Court is reversed and the case is remanded with direction to that court to remand the case to the trial court with direction to render judgment for the defendant.

In this opinion the other justices concurred.