[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE DEFENDANT'S MOTION TO DISMISS THE COMPLAINT (No. 102)
The Railway Labor Act, 45 U.S.C. § 151, et seq. ("RLA"), was enacted by Congress to, among other things, "provide for the prompt and orderly settlement of all disputes concerning rates of pay, rules, or working conditions" and "of all disputes growing out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions.'45 U.S.C. § 151a (4) (5). The motion to dismiss now before the court presents the issue of whether the plaintiff in this wage dispute, a Metro-North employee, has failed to exhaust his administrative remedies under the RLA and the applicable collective bargaining agreement ("CBA"). See Shortt v. NewMilford Police Department, 212 Conn. 294, 310, 62 A.2d 7 (1989). For the reasons set forth below the court, after conducting an evidentiary hearing and considering the submissions of counsel, finds that the answer to this question is in the affirmative.
The following facts are found. The plaintiff, Raymond Tooley ("Tooley"), was an assistant supervisor for the defendant, Metro-North Commuter Railroad Co. ("Metro-North") from 1993 to 1997. Tooley was an hourly employee covered by the CBA. In 1993, Tooley had a dispute with Metro-North concerning what he claimed was his fair portion of certain overtime payments. He attempted to file a grievance about this dispute on his own behalf but failed to follow the appropriate procedure.
The CBA requires that, "A claim or grievance must be presented in writing by an employee or on his behalf by his union representative to the employee's General Foreman or other designated official and the Director-Labor Relations within thirty (30) days from the date of the occurrence on which the claim is based." CBA ¶ 4-M-1(a). Tooley did not follow this designated procedure.
On July 27, 1993, Tooley submitted a handwritten document entitled "Grievance" to his union representative. This document asserts the claims to overtime payments that are the subject of this action. Tooley sent copies of this document to three persons, two of whom were "designated officials" within the meaning of the CBA but none of whom were the Director-Labor Relations. In consequence, the Director-Labor Relations never received a copy. The evidence establishes that this was a critical oversight since Metro-North's labor relations department never learned of Tooley's "Grievance" and consequently never CT Page 3088 became involved in the grievance process with respect to that document. The "Grievance" never became the subject of any formal action.
On August 3, 1993, Tooley's union representative filed a formal grievance on his behalf. This document, which complies with the requirements on the CBA, claims the right to certain working hours but does not assert the right to overtime compensation claimed in the July 27, 1993 "Grievance." The October 14, 1993 grievance was denied on October 14, 1993. Tooley had the right under the CBA to proceed to proceed to binding arbitration, CBA ¶ 4-M-1(c) but failed to exercise that right.
Tooley testified that he submitted additional written grievances. No copies of such documents have been submitted into evidence. The court is unable to find that Tooley has submitted any grievances, other than the August 3, 1993 grievance discussed above, that comported with the procedural requirements of the CBA.
On December 1, 1996, Tooley wrote a letter to his union representative complaining, without specifications of dates, that he had been treated unfairly "in matters involving the distribution of overtime." Copies of this letter were sent to six different persons, some of them "designated officials" within the meaning of the CBA but none of whom were the Director-Labor Relations. The Director-Labor Relations did not receive a copy. On January 7, 1997, the union representative wrote to a deputy chief engineer for Metro-North requesting a meeting on the "concerns" expressed in the letter.
On March 1, 1997, Tooley wrote a letter to Frank Torre, an assistant chief engineer for Metro-North, requesting certain overtime assignments. Copies of the letter were sent to six different recipients (the "cc" list differs slightly from that of the December 1, 1996 letter), including some "designated officials" but, once again, not the Director-Labor Relations. On March 17, 1997, Torre wrote a memorandum mandating that Tooley "be involved in catenary supervisor overtime rotation."
Tooley claimed in his testimony that he had been given various oral assurances that his claims for overtime compensation had been granted. No documents supporting this testimony have been submitted. The details of this claim are hazy at best. The CT Page 3089 evidence does not permit the court to find that any assurance of additional compensation has been given in any way that binds Metro-North.
Tooley commenced this action by service of process on April 21, 1998. His complaint consists of two counts. The first count is a statutory collection of wage claim brought pursuant to Conn. Gen. Stat. § 31-72. The second count asserts a common law breach of contract action. Both counts contain central references to the CBA. (The second count incorporates the factual allegations of the first count by reference.) The complaint asserts that, "At all times mentioned herein, it was the policy of Metro-North as codified in its collective bargaining agreement that any available overtime would be shared equally by all supervisors in the particular Metro-North Department." Complaint ¶ 8. It further claims that, "Tooley exhausted his administrative remedies pursuant to his collective bargaining agreement on the issue of Metro-North's failure to provide him with an equitable share of available overtime on numerous occasions." The second count further alleges that the claimed breach of contract arises out of the grievance process that the complaint asserts had occurred.
On June 25, 1998, Metro-North filed the motion to dismiss now before the court. An evidentiary hearing on the motion was held on January 11, 1999. The motion was argued on February 22, 1999. For the reasons briefly explained below, the motion must be granted.
Tooley, an hourly employee of Metro-North, is subject to the provisions of the RLA. See Long Island RR. v. InternationalAssociation of Machinists, 874 F.2d 901, 911 (2d Cir. 1989),cert. denied. 493 U.S. 1042 (1990). The RLA, as mentioned, was enacted "to provide for the prompt and orderly settlement of all disputes" involving rates of pay, grievances, and the interpretation or application of agreements covering rates of pay. 45 U.S.C. § 151a(4) (5). The Supreme Court has, for many years, drawn a distinction between "major' and "minor" disputes under the RLA. See Elgin, Joliet Eastern RR. v.Burley, 325 U.S. 711, 723 (1945). Major disputes involve the formation of collective bargaining agreements. Id. Minor disputes involve the interpretation or application of existing labor agreements. Hawaiian Airlines. Inc. v. Norris, 512 U.S. 246, 256
(1994). Disputes involving rates of pay, such as the present case, are minor disputes. Pennsylvania Federation of BMWE v.CT Page 3090National RR. Passenger Corp., 989 F.2d 112, 114 (2d Cir.), cert. denied, 510 U.S. 824 (1993). The RLA "requires submission of minor disputes to arbitration." Id. at 115. (Emphasis in the original). There has been no such submission in this case. In addition, our Supreme Court has interpreted the Connecticut statute on which the first count of Tooley's complaint is based, Conn. Gen. Stat. § 31-72, as requiring exhaustion of administrative remedies under applicable collective bargaining agreements. Shortt v. New Milford Police Department, supra,212 Conn. at 310. While Shortt does not address the question of common law contract claims, such as that asserted in the second count of Tooley's complaint, the broad language of the RLA leaves no doubt that such claims also require e exhaustion where they are "inextricably intertwined with consideration of the labor contract." Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 213
(1985). See Fry v. Airline Pilots Association. International,88 F.3d 831, 836 (10th Cir. 1996).
It is quite clear, both from the wording of Tooley's complaint and from the evidence presented at the hearing, that all of the claims asserted in the complaint are inextricably intertwined with the CBA. As recounted above, Tooley's complaint alleges that both his entitlement to the wages he seeks and his asserted exhaustion of administrative remedies are derived from the CBA.
Tooley relies on an exception to the preemption requirements imposed by federal law that must now be discussed. The Supreme Court has pointed out, "when the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." Livadas v.Bradshaw, 512 U.S. 107, 124 (1994). See Lingle v. Norge Division ofMagic Chef. Inc., 486 U.S. 399, 413 n. 12 (1988). Hernandez v. ConrivRealty Associates, 116 F.3d 35 (2d Cir. 1997), a case on which Tooley heavily relies, is a good example of this exception. The plaintiff inHernandez claimed that the defendant employer had promised to pay him for work he performed that was beyond the ordinary scope of his duties.Id. at 39. As the Second Circuit explained, "[t]here appears to be no need for a court even to refer to a collective bargaining agreement to adjudicate these claims." Id. The plaintiff in Hernandez further claimed that his employer promised him certain benefits ordinarily received by union. members if he left the union. The court explained that while this claim required consultation: of the collective bargaining agreement on certain elements of damages, the plaintiff's CT Page 3091 case on liability had nothing to do with that agreement. Id. at 40.
The contrast between Hernandez and this case could not be sharper. Tooley's entire case, both on liability and damages, is inextricably intertwined with the CBA. Moreover, Tooley at least implicitly recognizes the necessity of exhausting his administrative remedies under the CBA by pleading exhaustion in his complaint. For these reasons, Tooley's claims-must be considered preempted if his administrative remedies have not, in fact, been exhausted.
The evidence makes it clear that Tooley has failed to exhaust his administrative remedies under the CBA. Tooley never filed an appropriate grievance concerning the wage claims asserted here. The court's findings of fact, set forth supra, establish that Tooley's pro se efforts failed to comport with the grievance provisions of the CBA in critical ways. Metro-North's labor relations department never learned of those claims and never became involved in the grievance process with respect to those claims. Although the CBA provides that certain grievances are deemed allowed if not timely denied, CBA ¶ 4-M-1(b), that provision applies only to grievances filed in accordance with the CBA. Under these circumstances, Tooley's argument that his asserted "grievances" have been allowed is unavailing. Tooley has failed to exhaust his administrative remedies, and both counts of his complaint must be dismissed.
The motion to dismiss is granted.
Jon C. Blue Judge of the Superior Court