LOCAL 1035, INTERNATIONAL
BROTHERHOOD OF TEAM-
STERS, et al., Plaintiffs,

v.

PEPSI–COLA ALLIED BOTTLERS,
INC., Defendant.

No. 3:98CV1615(WWE).

United States District Court,
D. Connecticut.

Dec. 21, 1999.

302

Peter D. Goselin, Henry F. Murray, Thomas W. Meiklejohn, Livingston, Adler,

Pulda & Meiklejohn, Hartford, CT, for Plaintiffs.

Bernard Green, Marni Smith Katz, Green & Gross, P.C., Bridgeport, CT, Thomas W. Budd, Scott M. Wich, George P. Stasiuk, Daniel Moreland, Clifton, Budd & DeMaria, New York City, for Defendant.

### RULING ON DEFENDANT'S MOTION TO DISMISS

EGINTON, Senior District Judge.

This action, brought by twenty-five individuals and their collective bargaining agent, Local 1035 International Brotherhood of Teamsters ("Local 1035"), against Pepsi–Cola Allied Bottler ("Pepsi"), arises out of alleged violations of the federal Fair Labor Standards Act ("FLSA") and its Connecticut State Law analog.

Pending before the Court is the defendant's motion to dismiss [Doc. # 58]. For the reasons set forth below, the defendant's motion will be denied.

### FACTS

Defendant Pepsi is a Connecticut-based regional distributor of various soft-drink products. Plaintiffs are 25 individual employees of Pepsi and their collective bargaining agent Local 1035 International Brotherhood of Teamsters. Of the 25 individual employees, some hold the position of Bottle/Can Route Salesman and others are Sales Merchandisers.

On or about September 3, 1997, Local 1035 entered into a three year collective bargaining agreement with Pepsi. According to the agreement, the individual plaintiffs are compensated on a base pay plus commission basis. They are not, however, required to maintain records of their hours worked. Plaintiffs allege that they regularly work in excess of forty hours and do not receive overtime compensation in weeks in which they work in excess of 40 hours. Plaintiffs further allege that Pepsi's failure to pay them overtime violates

the FLSA and Connecticut State Overtime statutes.

## DISCUSSION

A motion to dismiss under Fed.R.Civ.P. 12(b)(6) should be granted only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). The function of a motion to dismiss "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir.1980). In considering a motion to dismiss, a court must presume all factual allegations of the complaint to be true and must draw any reasonable inferences in favor of the non-moving party. *Cruz v. Beto*, 405 U.S. 319, 322, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972).

### A. STANDING OF LOCAL 1035

■ An association has standing to bring a suit on behalf of its members only when: (1) its members would otherwise have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *Gay and Lesbian Law Students Association v. Board of Trustees, University of Connecticut, et al.*, 236 Conn. 453, 464, 673 A.2d 484 (1996) (adopting *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977)).

Defendant argues that plaintiff Local 1035 lacks associational standing to bring the federal FLSA and Connecticut State Overtime claim on behalf of its members because Local 1035's reasons for bringing this suit are "not germane to its purpose." Specifically, Pepsi argues that: (1) Conn. Gen.Stat. Section 31–68 does not expressly provide standing for Local 1035; and (2)

when an organization is primarily seeking money damages on behalf of its members, associational standing is precluded.

### 1. Conn.Gen.Stat. Section 31–68

Defendant asserts that Local 1035 does not have standing because Conn.Gen.Stat. section 31–68 does not expressly provide for associational standing. This assertion is not only unpersuasive, but also defeats the entire purpose of having a court-fashioned test for determining associational standing.

■ The doctrine of standing is a limitation which serves to identify those disputes which are appropriately resolved through the judicial process. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351, (1992). One cannot invoke the jurisdiction of the court unless he has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy. *Gay and Lesbian Law Students Association*, 236 Conn. at 466, 673 A.2d 484. *See Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). The doctrine of representational standing rests on the premise that, in certain circumstances, relationships created either by common law or by statute may be sufficient to rebut the general presumption that litigants may not assert the rights of absent third parties. *United Food and Commercial Workers v. Brown Group, Inc.*, 517 U.S. 544, 557, 116 S.Ct. 1529, 134 L.Ed.2d 758 (1996).

■ The doctrine of associational standing was designed to provide relief for an association in the absence of a specific statutory grant. It is the doctrine under which an organization may sue to redress its members' injuries, even without a showing of injury to the association itself. *Food and Commercial Workers*, 517 U.S. at 552, 116 S.Ct. 1529. Defendant's argument that associational standing is precluded in the absence of express statutory

language would obviate the necessity for the test.[1] Therefore, in the absence of express statutory language limiting associational standing, an organization that claims rights under Conn.Gen.Stat. Section 31–68 may still have standing if it satisfies the test under *Gay and Lesbian Law Students Association v. Board of Trustees, University of Connecticut, et al.*, 236 Conn. 453, 673 A.2d 484 (1996).

### 2. *Monetary Damages*

■ Defendant next asserts that Local 1035 fails the third prong of the *Hunt* test because the relief requested requires the participation of the individual members in the lawsuit. Specifically, the defendant argues that when an organization seeks damages on behalf of its members, associational standing is precluded.

Neither the Supreme Court of the United States nor the Supreme Court of Connecticut has addressed the issue of whether the third prong would bar a claim for damages absent legislative action. *See Food and Commercial Workers*, 517 U.S. at 554, 116 S.Ct. 1529.

> *Representational standing depends in substantial measure on the nature of the relief sought. If in a proper case the association seeks a declaration, injunction, or some other form of prospective relief, it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured.*

*Gay and Lesbian Law Students Association*, 236 Conn. at 464, 673 A.2d 484 (quoting in part from *Warth v. Seldin*, 422 U.S. 490, 515, 95 S.Ct. 2197, 45 L.Ed.2d 343

(1975) and from *Hunt*, 432 U.S. at 343, 97 S.Ct. 2434). In plaintiffs' prayer for relief, Local 1035 requests "such other legal or equitable relief as the Court deems just." While it is apparent from the complaint that the dominating motive for this action is to collect any and all wages and benefits that the plaintiffs have lost as a result of alleged illegal conduct, equitable relief is not beyond the scope of this litigation. If, at the end of a trial on the merits, the Court determines that the defendant has violated the F.L.S.A. or Connecticut Overtime Statutes, such a finding and subsequent penalty would possess an equitable component; Its intention would be to enjoin the defendant from continuing such illegal practice and would impact those members of Local 1035 not already a party to this action. Therefore, the relief requested does not necessarily require the participation of individual members in the lawsuit.

### B. Exhaustion of Administrative Remedies

■ Defendant argues that the individual plaintiffs have failed to exhaust their administrative remedies under the collective bargaining agreement ("C.B.A.") and are thereby barred from pursuing their case under Conn.Gen.Stat. Section 31–51bb.[2]

■ Conn.Gen.Stat. Section 31–51bb expressly provides an employee access to the judicial process to redress violations of state or federal law despite the existence of a C.B.A., provided that the cause of action is not for the breach of, or dependent upon, any provision of the C.B.A.[3] An

---

1. Defendant has not supplied the Court with any legislative intent which would remotely favor its argument.

2. The Court notes that claims under the F.L.S.A. are not barred by prior submission of a plaintiff's grievances to his contractual dispute-resolution procedures. *Barrentine v. Arkansas–Best Freight System*, 450 U.S. 728, 734–746, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981).

3. Conn.Gen.Stat. Section 31–51bb provides that:

> No employee shall be denied the right to pursue, in a court of competent jurisdiction, a cause of action arising under the state or federal constitution or under a state statute solely because the employee is covered by a collective bargaining agreement. Nothing in this section shall be construed to give an employee the right to pursue a cause of action in a court of competent jurisdiction for

employee who does not exhaust the grievance procedures established in a C.B.A. may pursue a cause of action in the Superior Court if the cause of action is premised on an independent statutory claim. *Genovese v. Gallo Wine Merchants*, 226 Conn. 475, 481, 628 A.2d 946 (1993).

Plaintiffs allege that Conn.Gen.Stat. Section 31–72 is the violation of state law which triggers Conn.Gen.Stat. Section 31–51bb. That section allows an employee to bring a civil action when his employer fails to pay him his wages. Connecticut courts have also stated that Conn.Gen.Stat. Section 31–72 is "remedial" and should be construed as a statute for collection of wages that coexist with contractual submission of wage disputes to grievance procedures specified in applicable collective bargaining agreements. *Shortt v. New Milford Police Department*, 212 Conn. 294, 310, 562 A.2d 7 (1989). Specifically, Conn. Gen.Stat. section 31–72 is an appropriate antecedent resource where the plaintiff is afforded a meaningful administrative remedy by the grievance process. *Shortt*, 212 Conn. at 304, 562 A.2d 7.

The language cited by the defendant as providing the plaintiffs with administrative remedies is not a meaningful remedy.[4] The following is the administrative remedy set forth in the C.B.A. which the defendant contends the plaintiffs must first exhaust:

*If any provision of the Article is invalid under the law of any State ... such provision shall be renegotiated for the purpose of adequate replacement.*

breach of any provision of a collective bargaining agreement or other claims dependent upon the provisions of a collective bargaining agreement. Conn.Gen.Stat. Section 31–51bb.

4. The C.B.A. defines the rights, duties and obligations by and among the named parties to this action and are integral to the Amended Complaint. In cases involving "integral" agreements and documents, a court may consider them on a motion to dismiss, even though they are not otherwise attached or referenced in the Complaint, without converting the motion to one for summary judgment.

*The Company recognizes the Union as the sole collective bargaining agency for employees engaged in work covered by this agreement.*

It is disingenuous to suggest that making individual employees negotiate a new provision of their C.B.A. with their employer is an adequate remedy for the dispute at hand.[5] Forcing employees to initially negotiate individually with their employer would violate the express contractual provision of the agreement, which states that Pepsi recognizes Local 1035 as the sole collective bargaining agency. Making the individual plaintiffs represent themselves before their employer logically defeats the purpose of Conn.Gen.Stat. Section 31–72, which embodies the important public policy of ensuring that employees receive wages due them, *See Butler*, 243 Conn. at 463, 704 A.2d 222, and having a collective bargaining agent.

The defendant cites no authority for the proposition that negotiation between an employer and the individual employee is ever an administrative remedy, much less a meaningful one, and this Court declines to be the first to adopt such a rule.

## C. Pre-emption

Defendant Pepsi lastly argues that the plaintiffs' state law claims are pre-empted by Section 301 of the Labor Management Relations Act. "It is recognized that where the resolution of a state law depends on an interpretation of the collective bargaining agreement, the claim is pre-empted." *Hawaiian Airlines, Inc. v.*

*International Audiotext Network, Inc. v. American Telephone and Telegraph*, 62 F.3d 69, 72 (2d Cir.1995).

5. Although in *Shortt*, the Connecticut Supreme Court denied court jurisdiction where there was an adequate grievance procedure, that procedure consisted of three substantive steps which provided the aggrieved individual with fair and reasonable opportunities to state his case and have timely and reasonable review and appeal of any decisions. *Shortt*, 212 Conn. at 298–99, 562 A.2d 7.

*Norris,* 512 U.S. 246, 261, 114 S.Ct. 2239, 129 L.Ed.2d 203 (1994). However, the fact that a C.B.A. will be consulted in the course of state-law litigation does not require extinguishment of the claim. *Foy v. Pratt & Whitney Group,* 127 F.3d 229, 233 (2d Cir.1997). Where a cause of action does not go beyond the simple need to refer to bargained-for wage rates in computing a plaintiff's damages, the C.B.A. is irrelevant to the dispute and no basis for pre-emption will be found. *Livadas v. Bradshaw,* 512 U.S. 107, 124, 114 S.Ct. 2068, 129 L.Ed.2d 93 (1994).

Defendant's argument that the plaintiffs' case will have to analyze the specific terms of the C.B.A. such as job titles, descriptions, and duties is no more than mere speculation at this point in the proceeding. For the Court at this time, the resolution of the plaintiffs' state law overtime claims require little more than the need to refer to bargained-for wages rates in reviewing the C.B.A.

### CONCLUSION

For the Reasons stated above, Defendant's Motion to Dismiss [Doc. # 58] is DENIED.