[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Where a union, as an exclusive bargaining agent, refuses to pursue an employee-teacher's grievance for longevity pay under a collective bargaining agreement, may the teacher bring a civil action for failure of the plaintiff to exhaust his contractual remedies. This court concludes that the teacher may maintain such an action if he specifically alleges that his union breached its duty of fair representation and if he joins the union as a defendant.
 I.
The plaintiff is a teacher employed by the defendant Amity Regional Board of Education (board). The Amity Education Association (union) is the exclusive bargaining representative of the bargaining unit of which the plaintiff is a member for the purpose of professional negotiation. A collective bargaining agreement exists between the union and the board. the plaintiff filed a grievance complaining that he was wrongfully denied longevity pay pursuant to Article VIII, section L of the collective bargaining agreement. That section provides: "In addition to salaries and Schedule C and D compensation, teachers having completed the following years of service . . . shall receive an additional compensation in accordance with the following schedule: after 19-20 years . . . $1,000 a year . . . . Payment shall start with the twentieth (20) year of service." when the union denied the plaintiff's request to take his grievance to arbitration, t he plaintiff brought this civil action against CT Page 11094 the board.
The board has moved to dismiss, alleging that this court lacks jurisdiction to hear this action because the plaintiff has failed to exhaust the grievance and arbitration procedure prescribed in the collective bargaining agreement. A motion to dismiss is the proper vehicle by which to raise a claim that this court lacks subject matter jurisdiction. Practice Book 143(1). "Because the exhaustion doctrine implicates subject matter jurisdiction, we must decide as a threshold matter whether that doctrine requires dismissal of the plaintiff's claim." Concerned Citizens of Sterling v. Sterling, 204 Conn. 551, 556,529 A.2d 666 (1987).
 II.
At the hearing on the defendant's motion to dismiss, the collective bargaining agreement was admitted as an exhibit. The agreement delineates a formal four-step grievance procedure: the matter is first to "be discussed with the principal with the objective of resolving the matter informally," next the matter may be brought to the superintendent of schools for a decision, and then to the board as a whole. Finally, if the aggrieved teacher is not satisfied with the disposition of his grievance, he may present a request in writing to the union to submit his grievance to arbitration. The agreement provides: "If the [union] determines and indicates in writing that the grievance is meritorious and submitting it for arbitration is in the best interests of the school system, then within ten days after such a written request for arbitration the rules and procedures of the American Arbitration Association shall be followed in the selection of an arbitrator or arbitrators." "By statute the agreement is enforceable; General Statutes 52-408; and one party may compel the other to proceed with arbitration by petitioning the Superior Court pursuant to General Statutes 52-410. After an award is rendered by an arbitrator, the parties may also apply to the Superior Court to vacate or confirm the award; General Statutes 52-418 through 52-420; and may then appeal the Superior Court's decision. General Statutes 52-423." School Administrators Assn. v. Dow, 200 Conn. 376, 381-381, 511 A.2d 1012 (1986). it is undisputed that the parties to the collective bargaining agreement, the union and the board, did not attempt to exhaust the grievance and arbitration procedures established in the agreement. The plaintiff never received the longevity pay to which he claimed he was entitled and the union refused to submit the grievance to arbitration.
 III.
The plaintiff first claims that he was excused from exhausting the CT Page 11095 grievance and arbitration procedure provided in the collective bargaining agreement because under that agreement he retained his right to sue the board directly. The court disagrees.
Article IVE, paragraph 9 of the collective bargaining agreement provides: "The sole remedy available to any teacher for any alleged breach of this Agreement or any alleged violation he/she presently has." The plaintiff does not challenge the validity of this provision. The plaintiff does claim that the language of the foregoing proviso arms him with an additional remedy, to wit, this civil action against the board. The rules of contract interpretation require this court to hold otherwise.
While there is authority for the proposition that the common law rules of contract interpretation do not necessarily apply to collective bargaining agreements; 48A Am.Jur.2d Labor Labor Relations, 1800; the Connecticut Supreme Court has repeatedly applied those rules to such agreements without hesitation. See, e.g., Connecticut Co. v. Division 425, 147 Conn. 608,616-617, 164 A.2d 413 (1960); Chase Brass Copper Co. v. chase Brass 
Copper Workers Union, 139 Conn. 591, 595-96, 96 A.2d 209 (1953).
Two rules of contract interpretation strongly militate against the interpretation of Article IVE paragraph 9 advanced by the plaintiff. The first rule is "that the general and positive agreement should have effect unless the exception clearly withdraws the case from its operation." Boon v. Aetna Ins. Co., 40 Conn. 575, 586 (U.S.D.C., D. Conn. 1874). Here, "the general and positive agreement" is that the grievance and arbitration procedure is "[t]he sole remedy available to any teacher for breach of the [a]greement." The second rule is that [w]here two clauses which are apparently inconsistent may be reconciled by a reasonable construction, that construction must be given, because it cannot be assumed that the parties intended to insert inconsistent and repugnant provisions." Dugan v. Grzybowski, 165 Conn. 173, 179, 332 A.2d 97 (1973).
Both clauses in Article IVE paragraph 9 may be reconciled and given effect. The legal rights reserved to teachers by the proviso are limited to rights arising under the statutes or constitution of the United States or the State of Connecticut. Cf. Alexander v. Gardner-Denver Co.,415 U.S. 36, 94 S.Ct 1011, 39 L.Ed.2d 147 (1974); Barrentine v. Arkansas-Best Freight System, Inc., 450 U.S. 728, 101 S.Ct. 1437,67 L.Ed.2d 641 (1981). While General Statutes 31-72[1] provides that when an employer fails to pay an employee wages the employee may sue for twice the amount of such wages, with costs and attorney's fees, that statute "merely provides an enhanced remedy for the collection of wages and does not "creat[e] independent substantive rights." Shortt v. New Milford Police Department, 212 Conn. 294, 309, 562 A.2d 7 (1989). the plaintiff CT Page 11096 does not claim that any other statute embodies the right which he is asserting in this action. Therefore, the court holds that the plaintiff is not excused by Article IVE paragraph 9 of the collective bargaining agreement from exhausting the grievance and arbitration procedure set forth therein.
 IV.
Having concluded that the collective bargaining agreement does not excuse the plaintiff from exhausting the grievance-arbitration remedy, the court turns to the principle issue: Whether the plaintiff may maintain this action against his public employer where the union alone could have brought his claim to arbitration and failed to do so.
In Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), the United States Supreme Court restated the rule requiring an employee to exhaust his grievance remedies under a collective bargaining agreement. The court also articulated limited exceptions to the rule. In Vaca, the court observed that "because these contractual remedies have been devised and are often controlled by the union and the employer, they may well prove unsatisfactory or unworkable for the individual grievant. The problem then is to determine under what circumstances the individual employee may obtain judicial review of his breach-of-contract claim despite his failure to secure relief through the contractual remedial procedures . . . . An obvious situation in which the employee should not be limited to the exclusive remedial procedures established by the contract occurs when the conduct of the employer amounts to a repudiation of those contractual procedures. . . .
"We think that another situation when the employee may seek judicial enforcement of his contractual rights arises if, as is true here, the union has sole power under the contract to invoke the higher stages of the grievance procedure, and if . . . the employee-plaintiff has been prevented from exhausting his contractual remedies by the union's wrongful refusal to process the grievance. It is true that the employer in such a situation may have done nothing to prevent exhaustion of the exclusive contractual remedies to which he agreed in the collective bargaining agreement. But the employer has committed . . . a breach of that agreement, a breach which could be remedied through the grievance process to the employee-plaintiff's benefit were it not for the union's breach of its statutory duty of fair representation to the employee. To leave the employee remediless in such circumstances would, in our opinion, be a great injustice. We cannot believe that Congress. in conferring upon employers and unions the power to establish exclusive grievance procedures, intended to confer upon unions such unlimited discretion to deprive injured employees of all remedies for breach of contract. Nor do we think that Congress intended to shield CT Page 11097 employers from the natural consequences of their breaches of bargaining agreements by wrongful union conduct in the enforcement of such agreements. Cf. Richardson v. Texas N.O.R. Co., 242 F.2d 230, 235-239 (C.A. 5th Cir.)
"For these reasons, we think the wrongfully discharged employee may bring an action against his employer in the face of a defense based upon the failure to exhaust contractual remedies, provided the employee can prove that the union as bargaining agent breached its duty of fair representation in its handling of the employee's grievance." Vaca v. Sipes, supra, 184-186. (Emphasis in original.)
In innumerable cases since Vaca, federal courts have "held or recognized that where a collective bargaining representative breaches its duty of fair representation an employee will be excused from exhausting the grievance and arbitration provisions of the collective bargaining agreement before bringing suit under 29 U.S.C. § 185." Annotation, "what Circumstances justify Employees' Failure to Exhaust Remedies Provided in Collective Bargaining Agreement Before Bringing Grievance Suit Against Employer in Federal Court, Under 301 of the Labor Management Relations Act of 1947 (29 U.S.C. § 185)." 52 ALR Fed. 591, 600-607 3[a].[2] and "contrary to earlier indications [such] suits encompass those seeking to vindicate `uniquely personal' rights of employees such as wages, hours, overtime pay, [as well as] wrongful discharge." Hines v. Anchor Motor Freight, Inc. 424 U.S. 554, 562 (1976).
However, "[t]he Labor management Relations Act, upon while this rule is based expressly exempts state and municipal government employees from coverage." Casey v. City of Fairbanks, 670 P.2d 1133, 1138 (Alaska 1983) (Footnote omitted.) "The term employer . . . shall not include . . . any State or political subdivision thereof . . . ." 29 U.S.C. § 152(2). Local boards of education, such as the defendant, "act as agents of the state when they are fulfilling the statutory duties imposed upon them pursuant to article eight, 1, of the Connecticut Constitution. They may also act as agents of municipalities in their function of maintaining control over public schools located within the municipalities' limits. Connecticut Assn. of Board of Education, Inc. v. Shields, 197 Conn. 554, 563, 499 A.2d 797
(1985). In either capacity they are exempted from the NLRA. "The National Labor Relations Act leaves regulation of the labor relations of state and local governments to the States." Abood v. Detroit Board of Education,431 U.S. 209, 233, 97 S.Ct. 1792, 1793 52 L.Ed.2d 241 (1977), reh. den.,433 U.S. 915, 97 S.Ct. 2989, 53 L.Ed.2d 1102 (1977). The question before this court, then, is whether the federal exemption to the exhaustion requirement, in cases where a union wrongfully refuses to process a grievance, should be adopted in Connecticut in the context of public employment. This court believes that is should. CT Page 11098
Firstly, our Supreme Court has consistently looked to federal labor law precedent in construing our labor statutes. Board of Education v. State Board of Labor Relations, 217 Conn. 110, 120, 584 A.2d 1172 (1991); Hartford Principals' Supervisors' Assn. v. Shedd, 202 Conn. 492, 503, 522 A.2d 264
(1987); School Administrators Assn. v. Dow, supra, 381; Winchester v. Connecticut State Board of Labor Relations, 175 Conn. 349, 354, 402 A.2d 332
(1978). While certified teachers are exempted by 7-467(2) from coverage under the Municipal Employee Relations Act; General Statutes 7-467 et seq.; such employees as well as employers such as the defendant are covered under the Teacher Negotiation Act, General Statutes 10-151, et seq. In Hartford Principals' Supervisors' Assn. v. Shedd, supra, 500, our Supreme Court observed that it had "recently adopted the federal rule that `"the employee must at least attempt to exhaust exclusive grievance and arbitration procedures established by the bargaining agreement" before resorting to the court.' School Administrators Assn. v. Dow, supra, 381, quoting Vaca v. Sipes, [supra,] 184. . . ." While adoption of the federal rule does not necessarily imply adoption of the exceptions, that first step and the continued adherence by our Supreme Court to federal labor law precedent is significant.
Secondly, the same rationale for the federal rule applies here. Assuming that a board of education breaches a collective bargaining agreement, "[t]o leave the employee remediless . . . would . . . be a great injustice." Vaca v. Sipes, supra, 105-106. this court cannot hold that the legislature, "in conferring upon employers and unions the power to establish the exclusive grievance procedures, intended to confer upon unions such unlimited discretion to deprive injured employees of all remedies for breach of contract. Nor do we think that [the legislature] intended to shield employers from the natural consequences of their breaches of bargaining agreement by wrongful minor conduct in the enforcement of such agreements." Id., 186. To allow the employee to sue his union; Tedesco v. Stamford, 222 Conn. 233, 252, ___ A.2d ___ (1992); but not his employer would needlessly exculpate the employer from the consequences of his breach, unnecessarily transfer all of the employer's liability onto the union; Vaca, supra 197; diminish the likelihood that an employee will be made whole since the union may have limited assets, and prevent the court from fashioning a remedy that orders the parties to arbitrate the underlying grievance. See Textile Workers Union of American v. Lincoln Mills of Alabama, 353 U.S. 448, 450-51, 77 s.Ct. 912, 1 L.Ed.2d 972 (1957).
Thirdly, most jurisdictions that have considered the issue have allowed an employee to sue his public employer where the employee's union has breached its duty of fair representation. Medeiros v. Murray, 639 F. Sup. 10
(D. mass. 1985) (applying Massachusetts law); Demings v. City of Ecorse, CT Page 1109917 Mich. App. 608, 339 N.W.2d 498 (1983); Braswell v. Lucas Metro. Housing Authority, 26 Ohio App.3d 51, 498 N.E.2d 184, 187 (1985); Nickiel v. City of Buffalo, 75 App. div.2d 1017, 429 N.Y.S.2d 332 (1980); see also Ziccardi v. Department of General Services, 500 Pa. 326, 456 A.2d 979
(1982). The employee may, however, join the employer as a party in his suit against the union for breach of the duty of fair representation thereby enabling the court to "fashion an appropriate equitable remedy which would permit grievance arbitration nunc pro tunc." Martino v. Transport Workers' Union of Philadelphia, 505 Pa. 391, 480 A.2d 242, 243-44 (1984) (employee discharged arguably in breach of collective bargaining agreement.)
Finally, affording a public employee a remedy against his governmental employer where his union has failed to pursue his grievance to arbitration in breach of its duty of fair representation will promote the peaceful adjustment of labor-management disputes as a substitute for labor strife. Cf. Winchester v. Connecticut State Board of Labor Relations, supra. This is an especially weighty consideration here since teachers are denied the right to strike. General Statutes 10-153e(a).[3]
it may be argues that the exception to the exhaustion requirement set forth in Vaca v. Sipes, supra, should not apply here because (1) that exception was founded on a breach by the union of a duty grounded in federal statutes and (2) in Vaca the lawsuit itself was deemed to arise under29 U.S.C. § 185(a) which, as discussed supra, does not apply to public employees such as the plaintiff.
Firstly, the duty of a union to fairly represent all of its employees need not be explicitly set forth by statute but may be implied in a statutory authorization for a union to be an exclusive bargaining representative. Vaca v. Sipes, supra, 177. Such authorization is contained in General Statutes 10-153a.
Secondly, a principal purpose of 29 U.S.C. § 185 was to give "federal district courts jurisdiction in controversies that involve labor organizations in industries affecting commerce, without regard to diversity of citizenship or amount in controversy." Textile Workers Union of America v. Lincoln Mills of Alabama, supra, 450. This was necessary because "[u]nder the United States constitution, the federal courts are courts of limited jurisdiction." Sabino v. Ruffolo, 19 Conn. App. 402, 407,562 A.2d 1134 (1989). Unless the constitution or federal statutes confer jurisdiction on the federal courts to hear a particular kind of controversy, those court lack jurisdiction to entertain the, However, such legislation on the state level is unnecessary in Connecticut since the Superior Court "is a court of general jurisdiction;" Heiberger v. Clark, 148 Conn. 177,189, 169 A.2d 268 (1961); and "is authorized to hear all case except those CT Page 11100 over which probate courts have original jurisdiction." Lampasona v. Jacobs,209 Conn. 724, 728, 553 A.2d 15 (1989). Since an action under29 U.S.C. § 185(a) for damages caused by breach of a collective bargaining agreement "closely resembles an action for breach of contract at common law;" International Union, United Auto Workers v. Hoosier Corp.,383 U.S. 696, 705, n. 7, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966); the Superior Court of this state has jurisdiction to entertain such an action without legislation specifically conferring such jurisdiction. Indeed, this is especially true in Connecticut where employees are generally deemed to be parties to, rather than third party beneficiaries of, a collective bargaining agreement. Paranko v. State, 200 Conn. 51, 55, 509 A.2d 508
(1986). The Connecticut Superior Court unquestionably has subject matter jurisdiction over actions for breach of contract. Sabino v. Ruffolo, supra; see Bank of Babylon v. Quirk, 192 Conn. 447, 449, 472 A.2d 21 (1984).
It is true that 29 U.S.C. § 185(a) was enacted to "authorize federal courts to fashion a body of federal law for the enforcement of . . . collective bargaining agreements and includes within that federal law specific performance of promises to arbitrate grievances under collective bargaining agreements." Textile Workers Union of America v. Lincoln Mills of Alabama, supra, 451; see Id., 458. Connecticut courts, however, have full equity jurisdiction; Palmer v. Hartford Nat. Bank Trust Co.,160 Conn. 415, 432-33, 279 A.2d 726 (1971); including the power of equity to order specific performance of agreements. See, e.g., Allen v. Nissley,184 Conn. 539, 440 A.2d 231 (1981). The rule of exhaustion in the area of labor law was fashioned by courts in the absence of a clear statutory statement; School Administrators Assn. v. Dow, supra, 379-382; and it is proper for courts to fashion exceptions to the rule. See Payne v. Fairfield Hills Hospital, 215 Conn. 675, 680-82, 578 A.2d 1025 (1990); Norwich v. Norwalk Wilbert Vault Co., 208 Conn. 1, 4-5, 544 A.2d 152 (1988); LaCroix v. Board of Education, 199 Conn. 70, 79, 505 A.2d 1233 (1986); Sullivan v. Board of Police Commissioners, 196 Conn. 208, 217, 491 A.2d 1096 (1985); Griswold v. Union Labor Life Ins. Co., 186 Conn. 507, 519-520, 442 A.2d 920
(1982).
another potential impediment to allowing a direct action by an employee against his public employer where the employee's union has wrongfully failed to process his grievance is the legislature's enactment of General Statutes31-51bb. that statute, entitled "Right of employee to pursue cause of action" provides: "No employee shall be denied the right to pursue, in a court of competent jurisdiction a cause of action arising under the state or federal constitution or under a state statute solely because the employee is covered by a collective bargaining agreement. Nothing in this section shall be construed to give an employee the right to pursue a cause of action in a court of competent jurisdiction for breach of any provision of a CT Page 11101 collective bargaining agreement or other claims dependent upon the provisions of a collective bargaining agreement." the plaintiff has not pleaded, nor has the court located a state statute authorizing an action, as here, for compensation due a public employee. See Shortt v. New Milford Police Dept., supra, (General Statutes 31-72 is not applicable to municipal employers and is a remedial remedy-enhancement law rather than one creating independent substantive rights). Therefore, this case is not governed by the first sentence of 31-51bb. The second sentence of 31-51bb is neutral, neither conferring nor withdrawing a right of action by an employee to sue based on a breach of a collective bargaining agreement. However, the legislative history of the statute is illuminating. "In ascertaining legislative intent, we may look to the history of the statute, the policy underlying it and the circumstances which brought it about." Gentry v. Norwalk, 196 Conn. 596, 606, 494 A.2d 1206 (1985).
The legislative history of 31-51bb reflects that its purpose was to overrule, in part, dicta in Kolenberg v. Board of Education, 206 Conn. 113,536 A.2d 577 (1988), cert. denied, 487 U.S. 1236, 108 S.Ct. 2903,101 L.Ed.2d 935 (1988), and to overrule one of the holdings in School Administrators Assn. v. Dow, supra, that even constitutional claims were subject to the exhaustion requirement. See 31 H.R.Proc. Pt. 10, 1988 Sess., pp. 4561-4572 (remarks of Representative Jay Levin[4] and Representative Dale Radcliffe); Connecticut Joint Standing Committee Hearings, Judiciary, Part 5, 1988 Sess., p. 1448-1450, 1575-1578 (remarks and written statement of attorney Ruth Pulda[5].) Notably, the House sponsor of the bill giving rise to 31-55bb, Representative Levin, stated that its purpose was to mandate by legislation what the united States Supreme Court had held in McDonald v. City of West Branch, 466 U.S. 284, 104 S.Ct. 1799,80 L.Ed.2d 302 (1984), Barrentine v. Arkansas-Best Freight System, Inc.450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981), and Alexander v. Gardner-Denver Co., 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974). See 31 H.R.Proc., Pt. 10, 1988 Sess., pp. 4565-4566.
In McDonald v. City of West Branch, supra, the court held that in a civil rights action under 42 U.S.C. § 1983, a federal court should not afford res judicata or collateral estoppel effect to an award in an arbitration proceeding brought pursuant to the terms of a collective bargaining agreement. Id., 292. Among the reasons cited by the court for its holding was: "The union's interests and those of the individual employee are not always identical or even compatible. As a result, the union may not present the employee's grievance loss vigorously, or make different strategic choices, than would the employee. . . . Thus, were an arbitration award accorded preclusive effect, an employee's opportunity to be compensated for a constitutional deprivation might be lost merely because it was not in the union's interest to press his claim vigorously." Id., CT Page 11102 291.
"In Barrentine v. Arkansas-Best Freight System, Inc., [supra], the court held that pursuit of a statutory right to vindicate a minimum wage claim under the Fair Labor Standards Act; 29 U.S.C. § 201 et seq., was not precluded by lack of success under the grievance procedures of a collective bargaining agreement." Shortt v. New Milford Police Department, supra, 307. The first reason advanced by the court for this rule was that "even if the employee's claim was meritorious, his union might . . . decided not to support the claim vigorously in arbitration . . . . Since a union's objective is to maximize overall compensation of its members, not to ensure that each employee receives the best compensation deal available . . . a union balancing individual and collective interests might validly permit some employee's statutorily granted wage and hour benefits to be sacrificed if an alternative expenditure of resources would result in increased benefits for workers in the bargaining unit as a whole." Barrentine, supra, 742, quoted in Shortt, supra, 309, n. 14.
"In Alexander v. Gardner-Denver Co., 415 U.S. 36. 94 S.Ct. 1011,39 L.Ed.2d 147 (1974), the court permitted a trial de novo under Title VII of the Civil Rights Act of 1964, 701 et seq. as amended,42 U.S.C.A. 2000e
et seq., to enforce a claim of wrongful discharge due to racial discrimination, despite the prior unsuccessful submission of this claim to grievance proceedings pursuant to a collective bargaining agreement." Shortt, supra. One of the reasons for the court's holding was the union's exclusive control over the manner and extent to which an individual grievance is presented. See Vaca v. Sipes, 386 U.S. 171 (1967); Republic Steel Corp. v. Maddox, 379 U.S. 650 (1965). In arbitration, as in the collective bargaining process, the interests of the individual employee may be subordinated to the collective interests of all employees in the bargaining unit. See J.I. Case Co. v. NLRB, 321 U.S. 332 (1944). Moreover, harmony of interest between the union and the individual employee cannot always be presumed . . . . And a breach of the union's duty of fair representation may prove difficult to establish. See Vaca v. Sipes, supra . . . ." Alexander v. Gardner-Denver Co., supra, 58, n. 19.
Therefore, the purpose of General Statutes 31-51bb was to redirect Connecticut law in the direction of federal case law which allows an employee to sue his employer for violating her constitutional or statutory rights notwithstanding that the employee did not exhaust her grievance-arbitration remedies. More, the holdings in those federal cases — McDonald, Gardner-Denver and Barrentine — were grounded in the recognition that a union may not represent the interests of all of its CT Page 11103 employees all of the time. While 31-51bb, as illuminated by its legislative history, does not explicitly support the plaintiff's claim here, neither does it subvert it.
Finally, this court has carefully considered the recent decision in Tedesco v. Stamford, 222 Conn. 233, ___ A.2d ___ (1992). In Tedesco, the Supreme Court held that a discharged employee was not denied procedural due process where the only "process" afforded him was the contractual grievance and arbitration procedure, notwithstanding that his union failed to pursue his grievance to arbitration. In the course of its opinion the court, quoting Vaca v. Sipes at length, spoke approvingly of a unions' right and duty to screen grievances. Quoting Vaca, the Tedesco court stated: "`It can well be doubted whether the parties to collective bargaining agreements would long continue to provide detailed grievance and arbitration procedures . . . if their power to settle the majority of grievances short of the costlier and more time-consuming steps was limited by a rule permitting the grievant unilaterally to invoke arbitration. Nor do we see substantial danger to the interests of the individual employee if his statutory agent is given the contractual power honestly and in good faith to settle grievances short of arbitration . . . The dampening effect on the entire grievance procedure of this reduction of the union's freedom to settle claims in good faith would surely be substantial. Since the union's statutory duty of fair representation protects the individual employee from arbitrary abuses of the settlement device by providing him with recourse against [his] . . . union, this severe limitation on the power to settle grievances is neither necessary nor desirable . . . .'" Tedesco v. Stamford, supra, 251-252.
What is noteworthy for present purposes is that in the final ellipsis in the foregoing quotation the Supreme Court deleted the reference in Vaca v. Sipes to an employee action against his employer. That is, in Vaca, the court stated: "Since the union's statutory duty of fair representation protects the individual employee from arbitrary abuses of the settlement device by providing him with recourse against both employer (in a 301 suit) and union, this severe limitation on the owner to settle grievances is neither necessary nor desirable." Vaca v. Snipes, supra, 193 (emphasis added). The reference to a "301 suit" is to 301 of the Labor Management Relations Act of 1947, codified at 29 U.S.C. § 185. While it is tempting to read our Supreme Court's "tea leaves;" State v. Brown, 14 Conn. App. 605,629, 543 A.2d 750 (1988), cert. denied, 208 Conn. 816, 546 A.2d 283 (1988); and surmise that our Court would disallow an action by a public employee against his employer, an ellipsis is too thin a reed on which to rest a rule of law which would sequester Connecticut from the rule which prevails in the federal system and in virtually all other states. At least as CT Page 11104 plausible is that the court in Tedesco excised the reference to suits against an employer because 301 (29 U.S.C. § 185) on which such suits are based in federal court does not apply to public employees such as the defendant in Tedesco, as discussed above.
This court is aware that Vaca "was an imperfect attempt to accommodate the governmental and contractual conceptions of the nature of the legal relationship established by the collective bargaining agreement." David E. Fuller, "A General Theory of the collective Bargaining Agreement," 61 Cal.L.Rev. 663, 676 (1973). "Management representatives find it at least anomalous that their liability turns on the union's virtue . . . . Unions, apprehensive of judicial intervention in their representative functions, plead the drain of staff and treasury that follows when an objective standard of due care leads to defensive processing of nonmeritorious grievances through arbitration." Lewis B. Kaden, "Judges and Arbitrator: Observations on the Scope of Judicial Review," 80 Co.L.Rev. 267, 281 (1980). Moreover, individual employees may often remain remediless since under Vaca simple negligence by the union in not pursuing a grievance to arbitration is not a breach of the duty of fair representation. The Vaca court stated that such a breach "occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." Vaca v. Sipes, supra, 190; see also Hines v. Anchor Motor Freight Inc., supra, 570-71. It is inevitable that an attempt to accommodate so many divergent interests results in an imperfect balance.
Accordingly, this court holds that where, as here, a collective bargaining agreement provides that only the union can pursue a grievance to arbitration, and where the union fails to do so, a public employee may bring an action against his employer in the face of a defense based on failure to exhaust contractual remedies. "However, the employee must allege and prove that the union, as bargaining agent, breached its duty of fair representation in its handling of the employee's grievance." Cosentino v. Price, 136 Ill. App.3d 490, 91 Ill. Dec. 15, 483 N.E.2d 297,300 (1985). Moreover, in which a lawsuit the employee must join the union as a defendant to enable the court, if appropriate, to "fashion an appropriate equitable remedy which would permit grievance arbitration nunc pro tunc." Martino v. Transport Workers' Union of Philadelphia, supra. Such a remedy would not be appropriate, however, where the arbitrator was a "captive of the employer and union dependent on both for repeated engagements." Wm. Isaacson and Wm. Zifchak, "Agency Deferral to Private Arbitration of Employment Disputes," 73 Col.L.Rev. 1383, 1400 (1973). "The appropriate remedy for a breach of a union's duty of fair representation must vary with the circumstances of the particular breach." Vaca v. Sipes, supra, 195. At this juncture, the union is not a party to this case and the CT Page 11105 plaintiff has not alleged that his union breached its duty to represent him fairly. Although the case is before the court on a motion to dismiss, and although Connecticut practice does not provide a plaintiff with a right to "plead over" where such a motion is granted, this court believes that the plaintiff should be afforded just such an opportunity. Cf. Balsavich v. Local Union 170 of International Brotherhood of Teamsters, 371 Mass. 283,356 N.E.2d 1217, 1220-1221 (1976). Firstly, a motion to dismiss is appropriate to challenge the jurisdiction of the court, not deficiencies in a complaint. Secondly, although the Supreme Court has repeatedly sanctioned a motion to dismiss as the appropriate procedural vehicle to raise the claim of failure to exhaust contractual remedies, in School Administrators Assn. v. Dow, supra, that court stated that such a claim "is not purely a question of subject matter jurisdiction and may have been more properly challenged by a motion to strike under Practice Book 152." Id., 380, n. 3. Where a motion to strike is granted because of a pleading deficiency the party whose pleading was stricken may timely file a new pleading. Practice Book 157. Finally, the issue is one of first impression in officially reported Connecticut case law and thus the plaintiff may at this early juncture be afforded some leniency notwithstanding his deficient pleading. Cf. Castellon v. Zoning Board of Appeals, 221 Conn. 374, 383-84, 603 A.2d 1168 (1992); Fishman v. Middlesex Mutual Assurance Co., 4 Conn. App. 339, 352,494 A.2d 606 (1985), cert. denied, 197 Conn. 806, 807, 499 A.2d 57 (1985).
"A breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." Vaca v. Sipes, supra, 190. But "[t]he allegations in a complaint for than conclusory statements alleging improper representation . . . . A complaint which does not specify supporting facts showing a union's lack of good faith fails to state a valid claim." Martin v. Shiawassee County Board of Commissioners, supra, 310 N.W.2d at 898.
The motion to dismiss is granted unless within twenty days the plaintiff moves to cite in his union as a defendant; practice Book 99, 100, 103, 196; General Statutes 52-107; and amends his complaint to properly allege, in more than conclusory fashion, that his union breached its duty of fair representation in failing to pursue his grievance to arbitration.